Petition of ALBERT JAY TOOKER.

No. 11171.
Submitted April 27, 1966. Decided July 20, 1966.
417 P.2d 87.

Albert Jay Tooker, pro se.

## MEMO OPINION

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

Original proceeding. Petition for writ of habeas corpus filed by Albert Jay Tooker, an inmate of the Montana State Prison, appearing pro se.

In support of his petition three contentions are made. First, that his right to a fair trial under the 14th Amendment was violated by the use of two depositions. This contention was considered by this court in In re Petition of Tooker, 147 Mont. 207, 410 P.2d 923, and decided adversely to him.

Second, that he was denied equal protection and due process in that his court-appointed counsel refused to appeal the conviction despite petitioner's request that counsel do so; and, third, petitioner submits that such court-appointed counsel should have: (a) appealed the case; (b) filed notice of appeal; or (c) at least notified the court in some manner of petitioner's request for appeal. Annexed to the petition is a copy of a letter from court-appointed counsel to petitioner, dated December 30, 1963. Petitioner had been convicted of murder in the second degree following a jury trial and sentenced to a term of forty years in October of 1963.

Following receipt of this petition the court requested petitioner to furnish the court with the original letter from court-appointed counsel and petitioner did so. This letter reads:

"It will be necessary for you to apply to the court for an appeal forma pauperis. I can not do it for you. I thought you understood that when we talked right after the trial.

"At the time I told you that I thought you had a chance to get the case reversed by the Supreme Court on two grounds:

"1. Those depositions of Flowers and Fox should not have been introduced in evidence;

"2. The court should have instructed on Manslaughter (3rd degree murder). The court refused to so instruct, holding that only 1st and 2nd degree murder was involved.

"I can't get any information on your property, but you might let me know who else I could write to and find out if it is still there.

"I am enclosing the two depositions that you requested I mail to you.

"Now if you want to appeal it will be necessary for you to apply to the court here for the appointment of an attorney to conduct the appeal and also for an order by the court directing the court reporter to prepare bill of exceptions at the expense of Hill County."

In petitioner's letter of May 7, 1966, enclosing the letter of December 30, 1963, in referring to the request of this court for copy of the letter petitioner had written to which the letter of December 30th was in response, petitioner stated: "I can only tell you that I wrote to Mr. Gillan and asked him to appeal my case *or at least get me my trial transcripts;* his reply is attached hereto and was enclosed with transcripts of the deposition hearings." (Emphasis ours.)

While petitioner contends the letter from his court-appointed counsel clearly shows that he had requested an appeal, the underlined words in his communication above, and the final paragraph in counsel's letter which uses the words: "Now if you want to appeal * * *", indicates there was still on the 30th day of December, 1963, no finality of decision in that respect by the petitioner.

Further, the matter of requesting that the murder conviction be appealed was before this court upon the previous petition for habeas corpus, as noted supra, in which cause counsel was appointed for petitioner and a hearing held in the district court at which the petitioner was present. It is extremely noteworthy that at this hearing petitioner testified in reply to the question:

"What did you say to your court-appointed counsel after you were sentenced? A. I asked John Gillan to prepare an appeal in my case.

"Q. Was this in the courtroom during the time of sentencing? A. Yes, over there (indicating by pointing).

"Q. What did he say? A. He informed me that I would have to do that myself.

"Q. At that time were you familiar with what the procedure would be to appeal a case? A. No, sir.

"Q. At the time of your sentence you did not make any oral statement in court concerning the appeal of the case? A. No, sir.

"Q. Did you talk to someone in the Sheriff's office about appealing the case? A. I asked Mr. Timmons about it and he

informed me to see my lawyer, he didn't have anything to do with appealing a case, but that I should contact the attorney about appealing it.

"Q. Did you try then to contact your attorney? A. I did, but there was no opportunity to contact my attorney. I was sentenced by approximately 10:00 or 10:45 o'clock in the morning and I was enroute between 1:00 or 2:00 o'clock to the State Penitentiary."

In this quoted testimony petitioner is first stating that he told his attorney to appeal and later on he is talking to the Sheriff about an appeal, and finally in conclusion, that he never had time to talk to his attorney about appeal because of the shortness of time between the sentencing and departure for the penitentiary.

To our mind the testimony of his counsel is much more believable. He testified in response to the question:

"At the conclusion of the trial did you ever discuss the question of appeal with the defendant? A. To the best of my knowledge we waived time of sentencing and asked that it be pronounced immediately after the trial. It was pronounced and to the best of my knowledge the defendant and I went out of the courtroom door and I called him over into the corner alongside of that door (indicates) and I asked Tooker if he wanted to appeal and I didn't get a satisfactory answer. He didn't say yes or no. I told Tooker if he changed his mind and wanted to go ahead with an appeal, I told him to tell the Sheriff so that he could advise me and that is all I can say transpired.

"Q. Did you have any contact with either the Sheriff or Tooker later with regard to an appeal? A. None, no. No definite instructions for me to appeal, the only communication I had with Mr. Tooker since then was when he sent me a request for copies of the depositions of Fox and Flowers and I sent those over to the Penitentiary to Tooker. . . . .

"Q. When was that? A. I guess about a year ago. .

"Q. At that time did he make any request of you to perfect an appeal for him? A. No.

"MR. MORRISON: No further questions.

"CROSS EXAMINATION

" (By Mr. Spangelo)

"Mr. Gillan, you indicated that you left the courtroom with the defendant and raised the subject of appeal to him and if I remember right you indicated that he didn't give you a satisfactory answer. Do you think that he understood what your conversation was? A. Well, I asked him a direct question.

"Q. And he gave no answer or an indirect answer of some sort, an indirect answer either yes or no. Had you found him to be unresponsive on other occasions? A. You are referring to our conversations prior to trial?

"Q. Yes. A. No, I thought he had a pretty fair understanding as to how we were going to conduct that trial.

"Q. So this was a little bit different when you didn't get a direct answer to your question here    A. Well, I don't know if it was different or not. The only other thing is this was two years ago but to my best recollection he gave me no answer either yes or no as to whether or not he wanted to appeal."

Referring once again to petitioner's letter of May 7, 1966, to this court, he stated therein that he had sent copy of Mr. Gillan's letter of December 30, 1963, to his court-appointed counsel in the habeas corpus proceeding, so not only was petitioner aware of what was stated therein but also his counsel. Petitioner insists the letter shows he requested an appeal, but we find it difficult to reconcile such a position with petitioner's own testimony in response to questions put by his own counsel upon the habeas corpus hearing.

▮▮▮▮ The burden is upon petitioner to convince this court that a writ should be issued. While we do not hold one appearing before us pro se to strict conformance with all the

rules, at the same time when the petitioner himself beclouds the issue by his own contrary statements, it is made self-apparent that his complaints are not justified.

The writ requested is denied and the proceeding is dismissed.

Mr. JUSTICES JOHN C. HARRISON, DOYLE, ADAIR and CASTLES concur.